UNITED STATES v. SNOHOMISH RIVER BOOM CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 15, 1917.)

No. 2962.

1. INDIANS ⟊⟋12—RESERVATIONS—BOUNDARIES.

The government by treaty acquired Indian lands in the northwest portion of what is now the state of Washington. By the treaty one section was reserved for an agricultural and industrial school. The boundaries of the reservation were fixed by executive order of December 23, 1873, as beginning at low-water mark on the north shore of Steamboat slough, thence west, etc., to low-water mark on the shore of Port Susan, thence southeasterly along the shores of Tulalip Bay and Port Gardner, and across the mouth of Ebey slough to the place of beginning. The latter slough is really the mouth of a river. *Held*, that the mouth of Ebey slough could not be treated as continuing far enough south to include tidelands separated from other parts of the reservation by a deep water channel.

2. INDIANS ⟊⟋12—RESERVATIONS—TIDELANDS—UPLANDS.

Tidelands are no part of an Indian reservation, unless expressly included, where not attached to the upland.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Action by the United States of America against the Snohomish River Boom Company and another. There was a judgment for defendants (234 Fed. 95), and plaintiff brings error. Affirmed.

Clay Allen, U. S. Atty., and Winter S. Martin, Asst. U. S. Atty., both of Seattle, Wash.

J. A. Coleman, of Everett, Wash., for defendants in error.

Before GILBERT and HUNT, Circuit Judges, and DIETRICH, District Judge.

HUNT, Circuit Judge. This controversy arises over the right to a triangular tract of tideland situate near the mouth of Ebey slough, near the confluence of Ebey and Steamboat sloughs, in waters adjacent to a part of the Tulalip Indian reservation in Snohomish coun-

ty, Wash. The case was tried to the court, and at the conclusion of the evidence of plaintiffs, judgment was ordered in defendants' favor. For convenience we use a map, which was introduced at the trial before the District Court.

[1] By treaty, proclaimed April 11, 1859, between the United States and certain Indian tribes, the Indians ceded to the United States all their interest in a large part of the northwest portion of what is now the state of Washington, and by article 3 of the treaty there was reserved from out of the lands ceded 36 sections or one township of land on the northwestern shore of Port Gardner and north of the mouth of the Snohomish river and Tulalip Bay and Kwilt Ceda creek (platted as K-Will-Ceda), for the purpose of establishing thereon an agricultural and industrial school. 12 U. S. Stat. at Large, p. 927. On December 23, 1873, President Grant, by executive order, fixed the boundaries of the Tulalip reservation as follows:

"Beginning at low-water mark on the north shore of Steamboat slough at a point where the section line between sections 32 and 33 of township 30 north, range 5 east, intersects the same; thence north on the line between section 32 and 33, 28 and 29, 20 and 21, 16 and 17, 8 and 9, and 4 and 5, to the township line between townships 30 and 31; thence west on said township line to low-water mark on the shore of Port Susan; thence southeasterly with the line of low-water mark along said shore and the shores of Tulalip Bay and Port Gardner, with all the meanders thereof, and across the mouth of Ebey slough to the place of beginning."

246 F.—8

A survey of the reservation was made between August, 1873 and May 22, 1874, and thereafter an official map was made. This map was put in evidence, as were the field notes of the survey, together with a map upon which the field notes were platted. The latter map shows the tideland area deeded by the state of Washington to the predecessors in interest of the defendants, and what is called Smith Island and the tidelands attached to Smith Island, and part of the tidelands which have become the subject of this litigation appear.

The contention of the United States is that Ebey slough continues south far enough to include the triangular piece of tideland, and that the court erred in deciding that the mouth of Ebey slough was at a point which it is insisted is inside the slough and opposite the mouth of Kwilt Ceda creek. It is also argued that the southeastern boundary of the Indian reservation is not as fixed by the court, but follows in a straight line to the point of beginning across the mouth of Ebey slough, from the most southern tip, called Priest Point, of the reservation. Defendants' position is that the mouth of Ebey slough is as indicated in the government field notes, and that the southerly boundary of the Tulalip reservation is approximately a mile north of the north boundary of the tidelands in dispute. No controversy arises over the east or north or west boundaries of the reservation; the decision depends upon what is the true southern bound. The sketch and maps introduced show that Ebey slough is one of several mouths of the Snohomish river. Steamboat slough, Union slough, and Ebey slough, and the Snohomish river, all empty into Port Gardner, and north of the tidelands involved; Ebey slough being the most northerly and approximately a mile north of Steamboat slough. The meander notes specifically fix the mouth of Ebey slough as approximately a mile north of the line which counsel for the United States would have determined to be the southerly boundary of the reserve, a straight line from the point of low water at the southernmost point of the reservation to the southeast corner of the reservation.

It is true that the language of the executive order names a course of the western boundary of the reservation as southeasterly, but the boundary line must run along the shore of Port Susan, and along the shores of Tulalip Bay and Port Gardner, "with all the meanders thereof, and across the mouth of Ebey's slough, to the place of beginning." But, as Ebey's slough empties into Port Gardner, meanderings thereof would be practically impossible before the point of beginning could be reached. It was therefore necessary apparently to aid the description in the executive order by inserting the words, "and across the mouth of Ebey's slough." We cannot depart from the requirement that the line of the water boundary of the reservation shall run coincident with the line of low-water mark along the shores of Port Susan, Port Gardner, and Tulalip Bay, "with all the meanderings thereof." These calls are definite. The maps prove that Port Gardner extends considerably north of the tidelands involved, and that the mouth of Ebey slough is a mile northward of them. The lands are separated from the reservation by a deep water channel on the north and west, and as no waters except Tulalip Bay and Kwilt Ceda creek are specifically granted by the terms of the treaty with the Indians, we think the true inter-

pretation is that, inasmuch as Port Gardner extends north of the tide-lands in dispute, the use of the words "and across the mouth of Ebey slough" is explanatory, rather than conclusively definitive.

Our conclusion is that the United States meant to grant to the Indians lands, with such accretions as might naturally belong thereto, but that there was no purpose on the part of the President to include tidelands which were wholly separated from the land of the reservation, and we think the District Court was correct in its view that the mere fact that the executive order reads "southeasterly with the line of low-water mark along the shore of and across the mouth of Ebey slough to the place of beginning," should not be held as fixing a line which extends across the waters of Port Gardner, but must be carried to the mouth of Ebey slough, notwithstanding the fact that such a course is not directly southeasterly to the point of commencement.

[2] It is contended by counsel for the United States that, even if it should be held that the tidelands in dispute are not within the boundaries of the Tulalip Indian reservation, nevertheless they belong to the reservation, because they are part of the reservation tidelands. It is admitted that the lands in dispute do not attach to any uplands of the reservation; and, this being so, such lands cannot be a part of the reservation tidelands, unless they are within the boundaries of the reservation. Furthermore, these particular tidelands do not constitute an island, but are attached to Smith Island, which is no part of the reservation. They have formed by accretion, but the accretion has been to Smith Island, and not to the Indian reservation lands.

The judgment is affirmed.